# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALPHA SERVICES, LLC, an Idaho Limited Liability Company, and ROBERT ZAHARIE,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>THOMAS PEREZ, in his official capacity as Secretary, United States Department of Labor, *et al.*,<br>　　　　Defendants. | Case No. 2:14-cv-12-BLW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Alpha Services, LLC and Robert Zaharie, who operates the company, (collectively, "Alpha"), seek review of the December 12, 2013, Final Decision and Order of the Department of Labor Administrative Review Board ("ARB"). Alpha is a forestry services company based in Coeur d'Alene, Idaho. AR 357. It engages in tree planting and related services throughout the Southern and Western United States. *Id*. Many of its work sites are located in remote, mountainous areas inaccessible by paved roads. *Id*. In the past, Alpha used 15-passenger vans to transport its workers to and from its work sites. *Id*. Alpha claims that it stopped using vans after hearing of other companies having accidents involving similar vehicles. *Id*.

1

A dispute arose over whether Alpha's transport vehicles complied with Department of Labor safety regulations. The ARB held in favor of the Wage and Hour Division of the Department of Labor ("WHD") in finding that Alpha violated the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA") when Alpha attached a trailer to its retrofitted trucks while transporting field workers. Pending before the Court is the WHD's Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. 11), requesting that this Court affirm the ARB's determination.

The Court received and reviewed briefs from both sides and heard oral argument on May 6, 2014. For the reasons set forth below, the WHD's motion is GRANTED.

## BACKGROUND

The MSPA "assure[s] necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. Congress delegated legislative rulemaking authority to the DOL to implement the MSPA. 29 U.S.C. §§ 1841(d); 1861. The DOL originally interpreted the law so as not to apply to commercial forestry workers. *See Bresgal v. Brock*, 843 F.2d 1163, 1165 (9th Cir. 1987). But the Ninth Circuit rejected this interpretation and issued a nationwide injunction

ordering the DOL "to cease refusing to enforce" it with respect to forestry workers. *Id*. at 1171.

Alpha now utilizes 4x4 heavy duty trucks fitted with passenger compartments ("crew carriers") to transport its workers. *Id*. Each crew carrier has a door, windows, seats, seat belts, a roof emergency exit, and a sliding front window for communication with the driver in the cab. AR 358. The crew carriers are bolted or chained to the truck beds. AR 167. In order to comply with Occupational Safety and Health Administration field sanitation standards, Alpha occasionally tows a trailer behind its crew carriers to transport, among other equipment, portable toilets to the work site. *Id*.

Between September 10, 2007, and April 1, 2010, the WHD investigated Alpha's work sites. AR 401. On August 17, 2010, the WHD determined that Alpha had violated three separate MSPA regulations. *Id*. As relevant here, the WHD cited Alpha under 29 C.F.R. § 500.105(b)(2)(ix) for transporting workers in its retrofitted trucks while pulling a trailer.

29 C.F.R. § 500.105(b)(2)(ix) provides, in pertinent part:

> Workers may be transported in or on only the following types of motor vehicles: A bus, a truck with no trailer attached, or a semitrailer attached to a truck-tractor provided that no other trailer is attached to the semitrailer.

The Secretary of Labor adopted this regulation verbatim from the Department of Transportation's ("DOT") regulations at 49 C.F.R. § 398.4(i). The DOT defines a "bus" as "any motor vehicle designed, constructed, and used for the transportation of passengers: Except passenger automobiles or station wagons other than taxicabs." 49 C.F.R. § 398.1(e). The DOT defines "truck" as "any self-propelled motor vehicle except a truck tractor, designed and constructed primarily for the transportation of property." 49 C.F.R. § 398.1(f). And although the DOL adopted the DOT's regulations dealing with the transportation of workers in buses and trucks, notably it did not expressly adopt the DOT's definitions. Those terms, therefore, remain undefined in the DOL regulations. The issue is whether a specially modified vehicle which came from the original equipment manufacturer as a truck is now a bus following aftermarket conversion.

Alpha and the WHD agree that Alpha's vehicles were trucks as originally designed and manufactured, but dispute whether the trucks became "buses" for purposes of 29 C.F.R. § 500.105(b)(2)(ix) after being modified with crew carriers. AR 166. On April 24, 2012, the Administrative Law Judge ("ALJ") concluded that Alpha's vehicles were now buses, not trucks, and therefore Alpha could lawfully attach a trailer to its worker-occupied crew carriers. AR 291. The ALJ focused on the DOT's definitions of "bus" and "truck." According to the ALJ, the DOT's

definitions "focus on whether the purpose of the vehicle is to transport passengers . . . or property." AR 291. The ALJ concluded, therefore, that because Alpha's crew carriers added seating capacity in place of property-hauling capacity, the retrofitted trucks became "buses" for MSPA purposes. AR 292.

On appeal, the ARB disagreed. It concluded that the plain text of the DOL's regulation focused on what the vehicle was *originally* designed and constructed to do. AR 407. The ARB reasoned that Alpha's retrofitted trucks were originally designed as trucks, not as buses, and therefore remained "trucks" for MSPA purposes. AR 407.

Alpha appealed the ARB's decision by filing this lawsuit. *See* 29 U.S.C. § 1853(c). The WHD moved to dismiss, or in the alternative, for summary judgment.

**LEGAL STANDARDS**

The parties both agreed on the record at oral argument that the Court could convert WHD's motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). In actions challenging adjudicatory decisions made by administrative agencies, "the focal point for judicial review should be the

5

administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

## DISCUSSION

### A. *Jurisdiction*

The WHD argued in its opening brief that this Court lacks jurisdiction over Alpha's appeal because Alpha's original complaint invoked the Court's general subject matter jurisdiction to hear cases arising under federal law. Alpha subsequently filed its First Amended Complaint and Notice of Appeal which now properly invokes jurisdiction under 29 U.S.C. § 1853(c). Dkt. 14.[1] The WHD has since abandoned its jurisdictional challenge. Nonetheless, the Court has an independent obligation to satisfy itself that jurisdiction exists. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004), and, here, 29 U.S.C. § 1853(c) expressly vests appellate jurisdiction in a federal district court. This Court is satisfied it has jurisdiction to hear and resolve this case.

### B. *Alpha's new arguments on appeal*

Alpha raises several issues that it either previously conceded or did not raise with the Department of Labor. "As a general rule, we will not review challenges to

---

[1] Per the parties' agreement, the Court will treat Alpha's First Amended Complaint and Notice of Appeal as the operative complaint for purposes of the WHD's motion.

agency action raised for the first time on appeal." *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1023 (9th Cir. 2007); *see also Exxon Mobil Corp. v. EPA*, 217 F.3d 1246, 1249 (9th Cir. 2000) ("Petitioners have waived their right to judicial review of these final two arguments as they were not made before the administrative agency, in the comment to the proposed rule, and there are no exceptional circumstances warranting review.").[2]

Alpha waived most of its arguments on appeal by not raising them before the agency. First, Alpha argues that the MSPA and its implementing regulations do not apply to commercial forestry. *See* Amend. Compl. ¶¶ 39, 41(c), 42–47. But Alpha stipulated below that it is "subject to the jurisdiction of [MSPA]." AR 136. More importantly, Alpha conceded at oral argument before this Court that it is subject to the MSPA.

Second, Alpha contends that the ARB's decision was arbitrary and capricious because it "improperly relieved [the] WHD of its obligation to prove that 'agricultural' workers were transported in the crew carriers; that those workers were either 'migrant' or 'seasonal'; and that the crew carriers were unsafe."

---

[2] While this principle has sometimes been phrased in terms of standing or exhaustion, the Ninth Circuit has held that it is best characterized as waiver. *See Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1020 (9th Cir. 2004) ("The waiver rule only forecloses arguments that may be raised on judicial review; it is not an exhaustion of remedies rule that forecloses judicial review.").

Amend. Compl. ¶ 41(a). Alpha never raised these arguments to the Department of Labor. Moreover, it affirmatively stipulated that it "used . . . a motor vehicle or vehicles for transporting [its] *agricultural workers*." AR 110 (emphasis added). The WHD had no burden to prove that fact with additional evidence. The only question the ARB needed to resolve was whether Alpha's crew carriers constituted "trucks" or "buses" according to 29 C.F.R. § 500.105(b)(2)(ix). It did that.

### C. *Whether Alpha's crew carriers are trucks or buses*

Alpha contends that, although its retrofitted trucks were originally designed and manufactured as trucks, they became buses for purposes of 29 C.F.R. § 500.105(b)(2)(ix) when modified with crew carriers.

As the parties have stipulated to the pertinent facts, there are no material facts in dispute to preclude summary disposition. The remaining truck/bus inquiry is a pure question of law.[3] Neither the MSPA's text nor 29 C.F.R. § 500.105 defines "truck" or "bus." And without definitions, the Court finds the regulation

---

[3] The question is not, as Alpha suggests in its briefing, whether the ARB's legal interpretation is supported by substantial evidence. Substantial evidence is the standard by which an appellate court reviews a lower court's factual findings, but here there are no material factual issues in dispute. *See Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997). Furthermore, at oral argument, Alpha conceded that whether its retrofitted trucks are trucks or buses for purposes of the regulation is a question of law.

open to competing interpretations. Indeed, the divergent views of the ALJ and ARB highlight the regulation's ambiguity.

The Court must thus determine what level of deference, if any, to accord the ARB's interpretation of "truck" and "bus" in the DOL regulation. Typically, "substantial deference must be given to an agency's construction of its own regulations." *Price v. Stevedoring Servs. of America, Inc.*, 697 F.3d 820, 828 (9th Cir. 2012). This so-called "*Auer*" deference is warranted when the regulation interpreted is itself a product of the agency's expertise and authority in a given area. *See Gonzales v. Oregon*, 546 U.S. 243, 256–57 (2006); *see also Auer v. Robbins*, 519 U.S. 452, 461–63 (1997).

The question is more complicated here, where the DOL adopted the regulation at issue verbatim from the DOT's own regulations. *Compare* 29 C.F.R. § 500.105(b)(2)(ix) *with* 49 C.F.R. § 398.4(i). In *Gonzales v. Oregon*, the Supreme Court held that an Interpretive Rule issued by the Attorney General was not entitled to substantial deference because the underlying regulation being interpreted did "little more than restate the terms of the statute itself." 546 U.S. at 257. In that case, the Supreme Court held that a lower level of deference—*Skidmore* deference—was appropriate. *Id.* at 268–69.

Applying the analysis from *Oregon v. Gonzales*, the ARB's interpretation is not entitled to *Auer*'s substantial deference. Rather than use its "expertise and experience to formulate a regulation," the DOL elected to merely parrot the DOT's regulation. *Id*. at 257. The Court will therefore apply *Skidmore* deference. *See Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013) ("[W]hen *Auer* deference is not warranted, an agency's interpretation of an ambiguous regulation should be evaluated under the principle laid down in *Skidmore*.").

Under *Skidmore* deference, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in [the agency's] consideration, the validity of [the agency's] reasoning, [the agency's] consistency with earlier and later pronouncements, and all those factors which give [the agency's interpretation] power to persuade, if lacking power to control." *Gonzales*, 546 U.S. at 268 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)); *see also United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (noting that an opinion receiving *Skidmore* deference may "claim the merit of its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight").

The ARB concluded that whether Alpha's retrofitted trucks are "trucks" or "buses" under § 500.105(b)(2)(ix) depends on "what was contemplated at the time

10

the vehicle was originally conceived and manufactured, and not any modifications made afterwards." AR 406.

It reached its conclusion by applying the statutory canon of construction that statutory context matters. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The ARB noted that in regulating the transportation of migrant agricultural workers, MSPA's regulations expressly require that "[e]very motor vehicle transporting passengers, *other than a bus*, shall have a passenger compartment meeting the [] requirements [specified in the subsection]." 29 C.F.R. § 500.105(b)(3)(vi) (emphasis added). The ARB reasoned that logic and common sense require that the term "bus" must refer to one category of vehicles in both subsections 500.105(b)(2)(ix) and 500.105(b)(3)(vi) that differs from a "truck" in those same subsections.

The ARB explained: "A motor vehicle that has been modified by the addition of a passenger compartment to transport passengers is not a bus; for if it were a bus, it would not need to add a passenger compartment as contemplated by 29 C.F.R. § 500.105(b)(3)(vi)." AR 404–05. That is, § 500.105(b)(3)(vi) seems to envision two categories of vehicles: (1) a vehicle with a passenger compartment

11

and (2) a bus. The DOL's passenger compartment safety requirements do not apply to buses, even though buses clearly transport passengers. Thus, the safety requirements apply only to vehicles, other than buses, that have passenger compartments. Yet, under Alpha's interpretation of § 500.105(b)(2)(ix), its vehicles are buses because they now have retrofitted passenger compartments. If that interpretation were correct, then § 500.105(b)(3)(vi)'s passenger compartment safety requirements would be meaningless because a vehicle with a passenger compartment would be a bus, and the safety requirements do not apply to buses. Thus, it cannot be the case, as Alpha contends, that the addition of a crew carrier turns a truck into a bus. The distinction must be based on something else. The Court finds the ARB's analysis on this point thorough, logical, and persuasive.[4]

---

[4] Alpha contends that the ARB's decision "improperly imposed, as binding legal norms, substantive standards originally articulated in an interpretive rule, without having imposed those legal norms through notice and comment rulemaking." Amend. Compl. ¶ 41(b). This appears to relate to the ARB's reference to the WHD Advisory Memorandum No. 2006-1, Guidance on MSPA Vehicle Safety Standards (Mar. 1, 2006), which contained an interpretation of the word "designed" in the adopted DOT definitions of "bus" and "truck" as referring to "actions taken by the original manufacturer of the vehicle," and not "aftermarket modifications or alterations." *See* AR 407. In its decision, the ARB states only that the interpretation of the advisory memo "is both reasonable and necessary to sensibly enforce the expressed and implied provisions of the MSPA regulations." AR 405. The ARB did not view the WHD's interpretation as binding upon it, but rather undertook its own textual analysis and concluded that the WHD's interpretation was superior to Alpha's. AR 404–07

The ARB then considered the DOT's definitions of "bus" and "truck" which were not expressly adopted by the DOL. The ARB found these definitions to buttress its textual analysis. Relying on the dictionary definitions of "designed" and "constructed," the ARB concluded that, taken together, the operative terms "designed and constructed" logically point to the vehicle's original conception, design, and construction. That conclusion is consistent with the ARB's textual analysis; the fact that 29 C.F.R. § 500.105(b)(3)(vi) excludes buses from its passenger compartment regulations suggests that the agency relies on the original manufacturer of buses to ensure safety in those vehicles.

## CONCLUSION

The Court recognizes that Alpha, in retrofitting its trucks with crew carriers, intended to better protect its workers given the rough terrain in and around its work sites. Nonetheless, the Court must affirm the ARB's interpretation where, like here, it is based on a thorough and persuasive reading of the regulation. *See Skidmore*, 323 U.S. at 140.

For the reasons stated above, the Court GRANTS the WHD's Motion for Summary Judgment and affirms the ARB's Final Decision and Order.

The Clerk shall enter judgment in favor of the Defendants and against Plaintiffs.

Dated this 10th day of July, 2014.

                                        Richard C. Tallman
                                        United States Circuit Judge